LEE D. CHAVIS v. HOBSON R. REYNOLDS

No. 746DC81

(Filed 21 August 1974)

Agriculture § 12— tobacco allotment — no power to convey — contract unenforceable

Directed verdict for defendant on the ground that the contract sued upon was legally unenforceable should have been allowed where there was no evidence of circumstances under which by the controlling federal law and regulations defendant had the lawful power to transfer to plaintiff or plaintiff had the legal right to receive from defendant the flue-cured tobacco allotment in question.

APPEAL by defendant from *Gay, District Judge,* 20 August 1973 Session of District Court held in HERTFORD County.

Civil action to enforce specific performance of a contract to convey a flue-cured tobacco allotment or in the alternative to recover its reasonable market value alleged to be in amount of $5,000.00.

In the spring of 1971 and for many years prior thereto defendant owned two farms in Hertford County, N. C., one designated as No. 2392 and the other as No. 2569 in the county office of the Agriculture Stabilization and Conservation Service. In his complaint plaintiff alleged that in 1971 defendant entered into an agreement with plaintiff's brother, who was acting as plaintiff's agent, to sell Farm No. 2392 with all of its crop allotments, together also with the tobacco allotments on Farm No. 2569, "which had been proportionately combined in the Hertford County A.S.C. office with Farm No. 2392 tobacco allotment"; that plaintiff paid his agent and his agent in turn paid defendant

the agreed purchase price, and by deed dated 5 May 1971 defendant conveyed Farm No. 2392 to plaintiff's agent who in turn by deed dated 10 May 1971 conveyed said property to plaintiff, but after demand defendant refused to execute the necessary documents to transfer the tobacco allotments from Farm No. 2569 to Farm No. 2392. Defendant admitted executing the deed conveying Farm No. 2392 to plaintiff's brother, but denied making any contract with plaintiff's brother or with plaintiff to transfer in any manner any tobacco allotments allocated to Farm 2569, and pled that any such contract would be void and unenforceable under Federal statutes.

At the trial defendant's motions for a directed verdict, made at the close of plaintiff's evidence and at the close of all evidence, were denied. The jury returned verdict finding that defendant had contracted to convey the tobacco allotments from Farm No. 2569 and that plaintiff should recover damages in the amount of $1,200.00 and use of tobacco allotment on Farm 2569." The district judge entered judgment on the verdict that plaintiff recover $1,200.00 from defendant and ordered defendant to execute necessary "A.S.C. forms in the Hertford County A.S.C. office to transfer the use and benefit of all tobacco allotments on Farm No. 2569 to the plaintiff, Lee D. Chavis, perpetually."

Defendant appealed, assigning among other errors the denial of his motions for a directed verdict.

*Cherry, Cherry & Flythe by Joseph J. Flythe and Ernie Evans for plaintiff appellee.*

*Carter W. Jones by C. Roland Krueger for defendant appellant.*

PARKER, Judge.

The motions for directed verdict should have been allowed. Federal marketing quotas for tobacco are controlled by Part 1 of Section B, Subchapter II, of the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C. § 1311, et seq. This Act provides that farm marketing quotas for tobacco "may be transferred only in such manner and subject to such conditions as the Secretary [of Agriculture] may prescribe by regulations." 7 U.S.C. § 1313(d). Pursuant to this statutory authority, the United States Secretary of Agriculture issued regulations governing transfer of farm marketing quotas for flue-cured tobacco. These

regulations expressly provide that "[t]here shall be no transfer of farm marketing quotas [for flue-cured tobacco] except as provided in §§ 725.72, 725.76, and Part 719 of this chapter." 7 C.F.R. § 725.74. The first of the sections referred to, § 725.72, provides that under certain circumstances farm marketing quota allotments for flue-cured tobacco may be transferred by lease, but subsection (b) of that section expressly provides that any such lease for 1971 and subsequent crops may be made for a "term of years not to exceed five," and no provision is made in § 725.72 for the permanent transfer of any such allotment from one farm to another. The second of the sections referred to, § 725.76, deals with the transfer of tobacco farm acreage allotments "for farms affected by a natural disaster," and clearly has no application to the facts of the present case. The third portion of the regulations referred to, Part 719 of Chapter VII, is entitled "Reconstitution of Farms, Allotments, and Bases" and sets forth the circumstances under which the combination or division of farm acreage may be reflected in the reallocation of crop quotas. Here again, however, the evidence in the present case fails to show circumstances which would permit the flue-cured tobacco quota allotment of Farm No. 2569 to accompany conveyance of the fee and the crop quotas of Farm No. 2392. In his complaint plaintiff alleged that the tobacco allotments on Farm No. 2569 "had been proportionately combined in the Hertford County A.S.C. office with Farm No. 2392 tobacco allotment," but his proof failed to show this. Indeed, plaintiff's own witness, William S. Early, Executive Director of the Hertford County A.S.C.S. office, testified exactly to the contrary. Thus, the evidence in the present case, even when considered in the light most favorable to plaintiff, fails to disclose circumstances under which by the controlling Federal law and regulations defendant had the lawful power to transfer to plaintiff or plaintiff had the legal right to receive from defendant the flue-cured tobacco allotment here in question. Directed verdict for defendant on the ground that the contract sued upon was legally unenforceable should have been allowed.

While we rest our decision on the basis above referred to, we also note that a close question is presented whether the evidence was sufficient to go to the jury on the issue whether any such contract as alleged by plaintiff was in fact made. To establish the contract plaintiff relied primarily on certain notations on the checks by which plaintiff's brother paid defendant the purchase price for the Farm No. 2392 which was conveyed, but

Chavis v. Reynolds

all of the evidence seems to indicate that plaintiff was an undisclosed principal in that transaction, and both defendant and plaintiff's brother, the only two persons directly and personally involved, testified that prior to closing they learned that the flue-cured tobacco allotment on the farm retained by defendant, No. 2569, could not be legally transferred and they closed the transaction on that basis. For example, plaintiff's brother testified: "I did not buy the tobacco allotment because it could not be sold."

Defendant properly and in apt time made his motions for a directed verdict, but the record fails to show that any motion for judgment notwithstanding the verdict was made in accordance with G.S. 1A-1, Rule 50 (b) (1) nor did the judge following the verdict on his own motion grant, deny, or redeny the motion for directed verdict made at the close of all the evidence. G.S. 1A-1, Rule 50 (b) (2) provides:

> "(2) An appellate court, on finding that a trial judge should have granted a motion for directed verdict made at the close of all the evidence, may not direct entry of judgment in accordance with the motion unless the party who made the motion for a directed verdict also moved for judgment in accordance with Rule 50 (b) (1) or the trial judge on his own motion granted, denied or redenied the motion for a directed verdict in accordance with Rule 50 (b) (1)."

Therefore, although we find that the trial judge should have granted defendant's motion for directed verdict made at the close of all the evidence, we may not direct entry in accordance with the motion. The judgment appealed from is vacated and the case is remanded to the Distict Court in Hertford County for entry of judgment dismissing the action without prejudice to plaintiff's right to institute a new action within six months after such dismissal.

Vacated and remanded.

Chief Judge BROCK and Judge BALEY concur.